IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GEOVERA SPECIALTY INSURANCE CO.,　　*
　　　　　　　　　　　　　　　　　　　*
　　　　　Plaintiff,　　　　　　　　　*　　　CASE NO.:　　1:10-cv-641
　　　　　　　　　　　　　　　　　　　*
v.　　　　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　*
STANLEY E. SMALL, FRANK H. KRUSE,　　*
Administrator for the Estate of Ryan Scott Small,　*
Deceased and LAFREDRIQUE GEORGE,　　*
　　　　　　　　　　　　　　　　　　　*
　　　　　Defendants.　　　　　　　　*

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Comes now GeoVera Specialty Insurance Company (hereinafter "GeoVera"), by and through undersigned counsel, and files its Brief in Support of Motion for Summary Judgment against Frank H. Kruse, Administrator for the Estate of Ryan Scott Small, Deceased, and LaFredrique George (hereinafter "George"), seeking this Court determine no Defendant has any rights and GeoVera has no obligations under the insurance policy issued to Stanley E. Small for the following reasons discussed herein.  In support, GeoVera alleges as follows:

## DISCLAIMER

With the utmost respect, the undersigned advises this Court that some of the facts presented in this brief are disturbing, and some of the terminology used is atypical of any the undersigned has ever submitted to any Court.  However, these facts are necessary to this Court's understanding of the insurance coverage dispute and are included for that purpose only, and not to embarrass, offend or harass this Court or any party or non-party.

## INTRODUCTION

GeoVera recognizes the tragedy and gravity of the events that allegedly occurred on March 31 and/or April 1, 2009 between Ryan Small (hereinafter "Small") and George. Respectfully, however, homeowners' insurance policies are not – either logically or legally – a source of recovery for an injured party who, while undisputedly under the influence of illegal drugs, was injured at the hands of an insured who was also under the influence of illegal drugs (per records obtained from Providence Hospital), when the insured violently stabbed the injured party at least <u>eight</u> times at the insured location where illegal substances, drug paraphernalia, sex objects and pornography were found, and after the insured mutilated himself by injecting needles in his genitals while encouraging the injured party to watch. However, public policy forbids recovery under such chaotic, deliberate and heinous circumstances, given the far reaching implications that would result.

It is equally clear that the insurance policy at issue does not cover George's claims for negligent infliction of physical injury and wantonness as asserted in his Complaint, despite its artful prose specifically drafted to create coverage where none exists. First, these alleged actions constitute assault and battery and, thus, are not occurrences pursuant to the policy. Secondly, coverage is excluded because the policy provisions specifically exclude claims for bodily injury where the injury is expected or intended by the insured, even if the injury is a type, kind, quality or degree that was not expected. Third, coverage is excluded because the policy further excludes any claim for bodily injury arising from the possession or use of illegal drugs. Finally, the parties to the insurance contract at issue never intended or anticipated that coverage could or would exist for an incident such as this.

The simple fact of the matter is homeowner's insurance policies do not, should not, and are not intended to cover violent acts such as the one in this case, where an insured repeatedly stabs another while both the insured and the injured party are under the influence of illegal substances.  Period.

## STATEMENT OF UNDISPUTED FACTS

**A.      Relevant Procedural Facts.**

1.       GeoVera Specialty Insurance Company is an insurance corporation organized and existing pursuant to the laws of the State of California with its principle place of business in Fairfield, California.

2.       Ryan Scott Small was the son of Stanley E. Small, and is deceased.  His estate was opened by George on September 2, 2010, with Frank H. Kruse appointed as Administrator.

3.       LaFredrique George is an individual citizen of the State of Alabama, with an alleged interest in the outcome of this declaratory judgment action.

4.       This Court has jurisdiction over this act pursuant to 28 USCA § 2201, The Federal Declaratory Judgment Act.

5.       This Court also has jurisdiction over this action pursuant to 28 USCA § 1332(a)(1) as the Defendants are citizens of Alabama and the Plaintiff is a corporate entity and organized and operating in California, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.       Stanley Small purchased the subject policy beginning April 22, 2008, as noted on the attached home insurance policy Declaration Page, attached hereto and incorporated herein as **Exhibit A**.

7.     On May 13, 2009, Stanley Small made a loss claim pursuant to this homeowner's policy for a physical injury that occurred on the insured property.  *See* copy of Large Loss Notice, attached hereto and incorporated herein as if fully stated as **Exhibit B**.[1]

8.     This action results from the incidents occurring on March 31/April 1, 2009, wherein Small stabbed George at least eight (8) times, injuring him.  Shortly thereafter, Small was arrested and charged with attempted murder (*In the Mobile County District Court*, Case No. DC-2009-307700).  Thereafter, on December 29, 2009, George filed a civil suit in the Circuit Court of Mobile County, Alabama against Small for damages. *See* Complaint, attached hereto as **Exhibit C.**  GeoVera has and is defending this lawsuit pursuant to a reservation of rights. Tragically, on April 22, 2010, Small passed away. *See* Suggestion of Death, attached hereto as **Exhibit D.**    Thereafter, on September 2, 2010, George opened an estate for Small.   On September 29, 2010, the Court substituted Frank Kruse, Administrator of the Estate of Ryan Scott Small, Deceased, as a party to the state court suit.

9.     On October 24, 2011, Mr. Stanley Small withdrew his claim for benefits as he is not a Defendant in the state court action. *See* Statement of Non-Claim dated October 24, 2011, attached hereto as **Exhibit E.**  Mr. Small has been dismissed from the case.

**B.     Facts of the Underlying Litigation**

10.     George's state court Complaint asserts as follows:

> 12.     Upon his return to the residence, the Defendant Small did not play any video games but talked continuously on his cell phone to others. While the Defendant Small was talking on his cell phone in his bedroom, the Plaintiff George came to talk to the Defendant Small.  As the Plaintiff George walked into the bedroom, Plaintiff George saw the Defendant Small sitting Indian style on his bed naked, wrapped in a bloody towel while Defendant Small was holding big, gigantic needles.

---

[1] This suit was originally brought on August 13, 2009, and voluntarily dismissed after Small's death.

19.     On or about the 1ˢᵗ day of April, 2009, in the City of Mobile, County of Mobile, State of Alabama, the Defendant Small or Fictitious Defendant A negligently caused or allowed the infliction of severe injuries to the person of the Plaintiff George by keeping dangerous instruments capable of inflicting severe injuries in light of the circumstances in which the Defendant found himself at a time near the incident and also negligently caused or allowed the inflicting of severe injuries by stabbing about ten different times into his head, side, back, and arm with a dangerous instrument.   Furthermore, the Defendant Small negligently delayed for many hours the taking of the Plaintiff George who was in an unconscious state bleeding from serious stab wounds to the hospital emergency room after the Plaintiff George had suffered serious injuries while occupying the Defendant Small's residence.

22.     On or about the 1ˢᵗ day of April, 2009, in the City of Mobile, County of Mobile, State of Alabama, the Defendant Small or Fictitious Defendant A wantonly caused or allowed the infliction of severe injuries to the person of the Plaintiff George by keeping dangerous instruments capable of inflicting severe injuries in light of the circumstances in which the Defendant found himself at a time near the incident and by stabbing him repeatedly with a dangerous instrument about ten different times into his head, side, back, and arm.   Furthermore, the Defendant Small wantonly caused or allowed Plaintiff George to lay in Defendant Small's residence with these serious wounds.   Defendant Small wantonly delayed for many hours the taking of the Plaintiff George who was in an unconscious state bleeding from serious stab wounds to the hospital emergency room after the Plaintiff George had suffered serious injuries while occupying the Defendant Small's residence.

11.     During the course of the state civil proceeding, discovery has progressed and George deposed.  In his deposition, George elaborated on his relationship with Small and the events of the evening in question.

12.     George testified he was introduced to Small in 2007 and they became friends after he helped Small move.  *See* Excerpts of deposition of LaFredrique George, attached hereto as **Exhibit F** at pp. 31-35.  The men socialized once or twice a month, with George sleeping at Small's home after going out to various places.  *Id.* at pp. 37-38.

13.     George stated several months before this incident, Small showed up unexpectedly at George's residence and accused him of stealing coins. *Id.* at p. 95.  George stated Small threatened him and told him he had napalm with him at the residence.  *Id.* at pp. 95-97.   No violence ensued. *Id.* at p. 94.

14.     On the specific night in question, George testified Small called him and asked him to stay with him as he was having a bad day and Small would, and did, pay him $100 for doing so.  *Id.* at pp. 46, 50.  According to George, Small believed rivals of his father's company wanted to harm him.  *Id.* at p. 48.  George testified that, when he arrived at Small's house, Small was in the bathroom and requested George to stay in the adjacent bedroom to talk to him. *Id.* at p. 54. George thought this was a strange request. *Id.* at p. 55.

15.     Then, a while later, after George ran an errand for Small, Small wanted to leave, so the two men went to two unidentified residences and a convenience store. *Id.* at pp. 56-57; 60-64.  After returning from the gas station, Small called his girlfriend or ex-girlfriend and they had a lengthy argument.  *Id.* at pp. 67-68  Small began screaming into the phone.  *Id.* at p. 68.

16.     George went to check on Small and found him sitting on his bed, naked, wrapped in a bloody towel, holding needles. *Id.* at pp. 66-68, 72; *See* **Exhibit C** at p. 12.  George thought this was "weird." **Exhibit F** at 70.  But, he did not leave or call anyone else to help. *Id.* at pp. 79-80.  This was not the first time George had seen Small with syringes. *Id.* at p. 75.  In fact, George testified he had seen Small with needles before and Small "indicated" he used the syringes to inject his testicles. *Id.* at pp. 75-76.  George stated Small wanted to be "bad" and liked "pain-type stuff."  *Id. at* p. 76.  George also said Small wanted George to watch as Small injected himself that night. *Id.* at pp. 77-78.

17.     After discussing the situation with Small, George did not leave, he instead decided to stay and went to sleep on the couch. *Id.* at pp. 79-81.  The next thing he recalls is waking up as he was being stabbed. *Id.* at p. 81.  George testified Small stabbed him repeatedly with an unknown weapon (needles or knives). *Id.* at pp. 84-87.  Small stabbed George in his left arm, in his shoulder, and twice in his bicep area, the right side of his shoulder, and in the back of his tricep area. *Id.* at pp. 85-87.  Small also stabbed George in his torso, underneath his ribcage to the right side and inflicted lacerations on George's face.  *Id. at* p.85 - 88.  In his verified Complaint, George stated Small repeatedly said, "I give you everything, I gave you everything, I gave you everything." *See* **Exhibit C** at Para. 15, p. 8.

**C.     The Coverage Matter**

18.     In the federal matter, GeoVera issued subpoenas to Providence Hospital, the Mobile Police Department, Butler Pappas Weihmuller Katz Craig LLP, the Mobile District Attorney, and the Alabama Department of Forensic Science.  Those records contain crime scene photos, witness statements, toxicology, DNA analyses and other information.

19.     The crime scene photos show rooms in disarray, blood, what appear to be drugs and drug paraphernalia. *See* Photos Received from Mobile District Attorney via Subpoena, attached hereto as **Exhibit G.**

20.     The records from the Alabama Department of Forensic Sciences identify the presence of several illegal or controlled substances in the home.  Specifically, Item 11A found at the scene was a powder material revealing the presence of cocaine hydrochloride weighing 1.65 grams. *See* Alabama Department of Forensic Science Records, at Bates Nos. NPS11172-11173, attached hereto as **Exhibit H**.  Item 13B found at the scene was liquid contents of a syringe revealing the presence of cocaine, weighing 2.97 grams. *Id.*  Additional reporting showed the

presence of cocaine hydrochloride in Item 11C, a plastic bag containing residue, *Id.* at Bates Nos. NPS11169-11170 and cocaine in Items 13A, one syringe containing residue, 13C one syringe containing residue, and 13D, one injection needle containing residue. *Id.* at Bates Nos. NPS11169-11170.  Blood samples taken from Ryan Small on April 2, 2009, tested positive for cocaine and benzoylecgonine. Sample/Item 1A. **Exhibit H** at Bates No. NPS11087**.**

21.     Providence Hospital records dated April 2, 2009 establish George's blood tested positive for amphetamines/methamphetamines, benzodiazepine, cocaine and cannabinoid. *See* Providence Hospital Records at Bates Nos. NPS11153-NPS11154, attached hereto as **Exhibit I**. George claims not to have used cocaine or marijuana prior to or the day of the stabbing. **Exhibit F** at p. 98.

22.     The medical records indicate George was stabbed approximately 8 times and suffered a left pneumothorax and a lacerated liver.  *See* **Exhibit I** at Bates Nos. NPS10295, 10299-300.  George underwent emergency surgery to repair the damage and was placed on a ventilator. *Id. at* NPS10285.   He was hospitalized for 8 days. *Id.* at  NPS10299-NPS10300.  On April 12, 2009, George had to return to Providence and have a post-traumatic or surgical abdominal hematoma repaired.  *Id.* at NPS100009-10.

23.     On November 18, 2011 Corporal Angela Prine and Officer Terrance Whitfield executed affidavits verifying and authenticating certain documents - Mobile Police Department Statement Narrative Form, Alabama Uniform Incident/Offense Report, Follow-up Investigative Report and the Mobile Police Department Homicide Unit Report, dated April 1, 2009 and updated May 26, 2009. *See* Affidavits and Exhibits of Corporal Angela Prine and Officer Terrance Whitfield, attached hereto as collective **Exhibit J.**  These documents provide additional information given to police by George and Small.  Officer Whitfield, the arresting/transporting

officer at the hospital drafted an Alabama Uniform Incident/Officer Report which states, in part, as follows:

> He [Small] stabbed the victim several times. …I left from my location to check on the status of the victim. The ER doctor adised [sic] that the victim was in critical condition with multiple stab wounds on his body. The ER doctor stated that the victim lost a lot of blood and flat-lined twice. The victim was taken to emergency surgery. I returned to my squad car and was told by the suspect that he was advised not to speak. I was advised to transport the suspect to police headquarters (unit 845). When transporting the suspect, he began to talk saying that he did everything for the victim. He said he was tired of victim using him, taking advance of him and treating him badly, the suspect also stated that he purchased the victim a car and gave him several thousands of dollars to help him with medical bills for the victim's son. I asked why did he stab the victim so many times. He replied "I'm vicious like that." …The suspect stated he shot the victim with cocain [sic] injections from the cocaine back at the home. …The suspect stated that he mutilates his genitals all the time and wanted to show me. …The suspect stated "if the victim dies, he dies."

*See* Alabama Uniform Arrest Report, attached hereto as **Exhibit K**.

24.     Corporal Prine's interview with George was recorded and transcribed and entitled Mobile Police Department Narrative Statement. *See* Mobile Police Department Statement Narrative Form, attached hereto as **Exhibit L,** relevant portions highlighted in Exhibit.

**D.      GeoVera's Policy**

25.     GeoVera's policy provides coverage for occurrences resulting in personal liability and medical payments to others under Coverages E and F. However, certain exclusions apply for bodily injury. The policy states:

**DEFINITIONS**

**A.      In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.**

**B.      In addition, certain words and phrases are defined as follows:**

2.      "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

. . . . . . . . . . . .

5.      "Insured" means:

    a.  You and residents of your household who are:
      (1) Your relatives; or
      (2) Other persons under the age of 21 and in the care of any person named above;

6.      "Insured location" means:
    a.  The "residence premises";
    b.  The part of other premises, other structures and grounds used by you as a residence; and
      (1) Which is shown in the Declarations; or
      (2) Which is acquired by you during the policy period for your use as a residence;

. . . . . . . . . . . .

8.      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

    a.  "Bodily injury"; or
    b.  "Property damage".

. . . . . . . . . . . .

## SECTION II - LIABILITY COVERAGES

A.      **Coverage E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1.      Pay up to our limit of liability for the damages for which an "insured" is legally liable.  Damages include prejudgment interest awarded against an "insured"; and

2.      Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or

**defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.**

**B.**     **Coverage F - Medical Payments to Others**

**We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury."  Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services.  This coverage does not apply to you or regular residents of your household except "residence employees."  As to others, this coverage applies only:**

**1.  To a person on the "insured location" with the permission of an "insured";**

. . . . . . . . . . . .

**SECTION II - EXCLUSIONS**

**E.**     **Coverage E - Personal Liability And Coverage F - Medical Payments To Others**

**Coverages E and F do not apply to the following:**

**1.  Expected Or Intended Injury**

**"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":**

**a.  Is of a different kind, quality or degree than initially expected or intended; or**
**b.  Is sustained by a different person, entity, real or personal property, than initially expected or intended.**

**However, this Exclusion E.1 does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;**

. . . . . . . . . . . .

**8.  Controlled Substance**

**"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21**

11

**U.S.C.A. Sections 811 and 812.  Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.  However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.**

. . . . . . . . . . . .

## GEOVERA SPECIALTY INSURANCE COMPANY SPECIAL PROVISIONS

### DEFINITIONS

The definition of "occurrence" is replaced by the following:

**8.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in :**

> **a.   "Bodily Injury"; or**
> **b.   "Property Damage"**

**Assault and battery is not an "occurrence", whether or not committed by or at the direction of an "insured"**

### SECTION II – EXCLUSIONS

**The following exclusions are added to E. Coverage**

**E – Personal Liability and Coverage F- Medical Payments to Others:**

. . . . . . . . . . . .

**Assault or Battery**

**"Bodily injury" or property damage arising out of assault or battery, whether or not committed by or at the direction of an "insured".**

. . . . . . . . . . . .

**Punitive or Exemplary Damages**
**Punitive or exemplary damages, or any costs or interest attributable to such damages.**

. . . . . . . . . . . .

12

## LAW AND ARGUMENT

**I.     Summary Judgment Standard**

Pursuant to Rule 56(c) of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celtex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of genuine issue of material fact." *Id.* at 323. This burden is met by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c).

In resolving the present Motion for Summary Judgment, this Court will construe the facts in the light most favorable to the nonmovant when the parties' factual statements conflict or inferences are required. *Barnes v. Southwest Forest Ind.,* 814 F.2d 607, 609 (11th Cir. 1987).

## II.     Public policy prohibits insurers from covering violent and/or criminal acts committed by insureds.

While the Defendants will certainly argue Small was mentally incapacitated at the time of the stabbing and was found not guilty by reason of insanity,[2] neither Small's mental competency to stand trial nor George's belief as to Small's state of mind can create coverage in this case.

The undisputed facts of this case clearly demonstrate that this was simply a bizarre and illegal drug party that eventually resulted in a violent and vicious stabbing that seriously injured George.   Public policy demands this incident be excluded from coverage.   According to the Northern District of Alabama:

> There can be no valid insurance coverage which will protect or indemnify the insured or indemnitee against a loss which he may purposely and willfully create, or which may arise from his immoral, fraudulent, or felonious conduct.  Such an express contract of insurance or indemnity is void as against public policy.

*See St. Paul Ins. Co. of Ill. v. Cromeans,* 771 F. Supp. 349, 352 (N.D. Ala. 1991) (citing *St. Paul Ins. Cos. v. Talladega Nursing Home*, 606 F. 2d 631, 634-35 (5th. Cir. 1979)).  Likewise, the Middle District of Alabama has stated:

> Allowing insureds to abdicate personal responsibility for actions such as this does not accord with traditional notions of what is decent and honorable in the law.

---

[2] The finding was never verified as established by the Alabama Rules of Criminal Procedure because of Small's death.  He was never institutionalized, nor was he evaluated post-finding.

> …
> This court believes that the state courts of Alabama have respect for the
> dictates of common decency and common sense, and it has applied the law
> as it believes the Alabama Supreme Court would.

*See Horace Mann Ins. Co. v. Cecil Fore*, 785 F. Supp. 947, 956 (M.D. Ala. 1992).

The presence and use of illegal drugs, the depravity, the self mutilation, and the vicious stabbing are all unconscionable and simply cannot be covered.  If the results of this chaotic and obscene drug party gone wrong are covered, what is next?  Often public policy arguments are not given due consideration, but the idea of coverage in this instance is so outrageous and offensive that it demands this Court's attention.   Accordingly, GeoVera requests this Court find no coverage under the policy.

**III.**   **The Policy does not provide coverage for Small's stabbing of George because the assault and battery was not an "accident" and, therefore, was not an "occurrence" triggering coverage under the policy.**

The insurance policy specifically defines occurrence as follows:

> **8.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in :**
>
> > **a.  "Bodily Injury"; or**
> > **b.  "Property Damage"**

The Special Provisions specifically state "assault and battery is not an occurrence, whether committed by or at the direction of the insured." *See* Home Owner's Insurance Policy, attached hereto as **Exhibit M** at Para. 8.

Under Alabama law, assault and battery is defined as a touching by one person of the person or clothes of another in rudeness, in anger, or in a hostile manner.  *Barnes v. Tuskegee Univ.*, 2006 U.S. Dist. LEXIS 25020, *40-42 (M.D. Ala. Apr. 24, 2006); *Ex parte Atmore Comm. Hosp.*, 719 So. 2d 1190, 1193-94 (Ala. 1998); *Peterson v. BMI Refractories*, 132 F.3d

1405, 1412 (11th Cir. 1998); *Surrency v. Harbison*, 489 So. 2d 1097, 1104 (Ala. 1986). A subjective intent to injure is not an element of the cause of action. *Id.* The common layperson's definition of assault and battery is "An assault upon a victim that is carried out by striking the victim, knocking the victim down, or otherwise doing violence to the victim." *See* American Heritage College Dictionary (3rd ed).

Given the definition of assault and battery, it is abundantly clear the events occurring on March 30/April 1 2008 constitute an assault and battery, regardless how Plaintiff labels the events in his colorfully-drafted Complaint. The undisputed facts show Mr. Small brutally stabbed George at least <u>8 times</u> and denied him medical care for an extended period of time. This was not "negligent infliction of physical injury" and that claim is worded specially in a blatant attempt to trigger coverage. Small's alleged mental defect or any plea agreements or Court Orders do not dispute these facts.

**IV.  George's injuries were "expected or intended by an insured" and are, therefore, expressly excluded under the policy.**

At the very least, the events that occurred in this case constitute an assault and battery as defined by Alabama law and, as such, they are not an occurrence within the meaning of the policy. However, the facts also show this assault was expected and/or intended by the insured. Plaintiff's Complaint alleges a brutal assault, a total failure to render assistance for a prolonged period of time, and a wantonness claim. However, simply calling these allegations "negligent" does not make them so, regardless of Small's mental condition.

In addition to the Policy's provision requiring an "occurrence" (that is, an "accidental" or "unintentional" act), the Policy also contains an exclusion prohibiting coverage for bodily injury or property damage that is "expected or intended by an insured." **Exhibit M**, Section II –

16

Exclusions E.1.  This exclusion expressly prohibits coverage for loss caused by an intentional act.  *Id.*

As is clear from the Policy's plain language, there is no coverage for injuries caused by an insured's intentional act.  Therefore, because Ryan Small acted intentionally when he repeatedly stabbed Mr. George, this Court should find there is no coverage under the Policy.

Plaintiff's Complaint is a disturbing narrative that was obviously drafted to create coverage for this incident.  **Exhibit C** at Paras. 12, 19 and 22.  The claims for negligent infliction of physical injury and wantonness are merely smoke screens for the actual tort at issue, assault and battery.[3]  However, such deceptive pleading is improper under Alabama law.

> When analyzing the allegations, "it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action," and if those "facts are irreconcilable with a legal theory, such as 'negligence,' asserted in the complaint, the facts, not the mere assertion of the legal theory, determine an insurer's duty to defend. *Id. at 1012*.  "If the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Tanner v. State Farm Fire & Cas. Co., 874 So. 2d 1058, 1063-64 (Ala. 2003)*(emphasis omitted).  If, though, the complaint's allegations show the non-existence of coverage, "the court is not limited to the bare allegations of the complaint in the action against [the] insured but may look to facts which may be proved by admissible evidence." *Hartford Cas. Ins. Co., 928 So. 2d at 1010 (*internal quotation marks omitted).

*See Cotton States Mut. Ins. Co. v. Daniel,* 2008 U.S. Dist. LEXIS 94696 (M.D. Ala. 2008).

---

[3] Importantly, George's wantonness claim alleges Small engaged in intentional conduct.  Alabama courts define wantonness as "a **conscious** doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result."  *Salter v. Westra*, 904 F.2d 1517 (11th Cir. 1990) (emphasis added) (quoting *English v. Jacobs*, 82 So. 2d 542, 544 (Ala. 1955)).  Alabama courts further hold that, "[b]efore a party could be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he **consciously** and **intentionally** did some wrongful act or omitted some known duty which produced the injury."  *Id.* (emphasis added).

In addition to George's negligent infliction of physical injury and wantonness claim, George also asserts claims for negligent entrustment of dangerous instrument and negligent breach of undertaking or implicit duty.  *See* **Exhibit C**.  However, those claims are made against fictitious parties, and not against Small or his estate.  *Id.*

Although Alabama courts have traditionally applied a subjective test when determining whether an insured committed an intentional act, the Alabama Supreme Court has found that the subjective test does not apply in certain cases.  *See State Farm Fire & Cas. Co. v. Davis*, 612 So. 2d 458, 464 (Ala. 1993) (holding that intent is inferred as a matter law in cases where injury results from an adult's sexual abuse of a minor child); *Allstate Indem. Co. v. Lewis*, 985 F. Supp. 1341 (M.D. Ala. 1997) (applying an objective test and finding homeowners' policy exclusion extended to all intentional acts giving rise to liability, even if the insured did not subjectively expect the resulting injury, as long as the injury could be expected objectively).

An instructive line of case include coverage cases dealing with sexual harassment or abuse.  In those cases, courts have modified treatment of the subjective intent standard.

> This being so, there is no subjective-intent issue in this case that presents a genuine issue of material fact.  Where, as here, intent to injure can be inferred as a matter of law, summary judgment is proper if the policy excludes coverage for intended injuries. *See, e.g., Linebaugh v. Berdish,* 144 Mich. App. 750, 376 N.W.2d 400 (1985).

*Horace Mann Ins. Co. v. Fore*, 785 F. Supp. 947, 956 (M.D. 1992).

Certainly, GeoVera is not suggesting assault and battery is a tort akin to the horrors of sexual molestation of children; however, the analysis in terms of coverage based on obvious facts is sound and applies here.  Small self-mutilated in George's presence, both men tested positive for illegal drugs, and the attack itself was vicious and brutal, resulting in multiple serious wounds.  Small admitted the acts and when specifically asked about the number of wounds, told Officer Whitfield he was just "vicious" like that.  Small  also expressed no remorse, saying "if he dies, he dies."   Under the undisputed facts, Small's intent can be inferred as a matter of law.

However, even if this Court applies a subjective test, then this Court should find that Small committed an intentional act when he repeatedly stabbed Mr. George.  Because Alabama law is silent on the issue of coverage under a homeowners' policy when an insured repeatedly stabs another inside the insured's home, this Court should follow the Eleventh Circuit's decision in the almost identical case of *Allstate Insurance Company v. Prasad*, 991 F.2d 669 (11th Cir. 1994).  In *Prasad*, the plaintiff brought suit in Florida state court against a mother and her son, who were both insured under an Allstate homeowners' policy.  *Id.* at 670.  While the plaintiff was visiting the defendants' home, the son injured the plaintiff by attacking her with a knife and repeatedly stabbing her.  *Id.*  The plaintiff alleged that the son was insane, was in a deteriorating mental condition, had violent propensities and was unpredictable and dangerous, and suffered from paranoid schizophrenia.  *Id.*

Allstate filed suit in federal court, seeking a declaratory judgment as to its obligations with regard to coverage and its duty to defend under the homeowners' policy, which contained the following language:

> Section II -- Family Liability and Guest Medical Protection, Coverage X, Family Liability Protection:
>
> (1) Losses We Cover
>
> Allstate will pay all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy.
>
> (2) Losses We Do Not Cover
>
> We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.

*Id.*  Allstate alleged that the son's actions constituted both criminal and intended conduct, and that the actions did not constitute an accident.  *Id.*  The plaintiff argued that the son was not capable of forming intent at the time of the stabbing due to his mental condition.  *Id.*

The district court granted Allstate's motion for judgment on the pleadings, and the plaintiff appealed to the Eleventh Circuit, which certified the following questions to the Florida Supreme Court:

> (1)    Under Florida law does the intentional acts exclusion of the policy in question apply in the circumstances alleged in the state court complaint?
>
> (2)    Are the injuries alleged in the state court complaint an "accidental loss" as described in the policy?
>
> (3)    Does the criminal acts exclusion of the policy apply in the circumstances alleged in the state court complaint?

*Id.*

The Florida Supreme Court held that an injury caused by an insured who is psychotic is not an "accident," and is an "intentional act," if the insured intends to cause the injury, even if the insured's conduct is the result of the insured's mental condition.  644 So. 2d 992 (Fla. 1994). The Court further held that "a person who is considered insane may still be capable of entertaining the intent to commit certain acts, even if that intent is the consequence of a delusion or affliction."  *Id.* at 995.  The Court explained:

> For instance, an insane or mentally ill person can still make plans to harm another, going so far as to obtain the weapon to be used and to seek out the victim.  By any stretch of the imagination, the person "intended" the act against the victim, even if the person did not fully understand what he or she was doing at the time of the crime.

*Id.*  The Court further explained that:

> To accept the opposing view would necessarily require us to find that, because a perpetrator is psychotic and unable to form the necessary intent, the injury he or she caused by stabbing was an "accident."  It would also

> imply that, if the perpetrator had been drunk to the extent that the defense of voluntary intoxication would apply, the stabbing would also be covered under this insurance policy as an "accident."  We are unwilling to hold that the definition of "accident" includes intentional assaults by psychotics and drunks but excludes other intentional assaults.

*Id.*  With regard to the son's intent, the Court found:

> In the instant case, the [plaintiff] alleges that [she] entered [the] mother's home, and [the son] approached her carrying a knife.  Then, without warning, [the son] repeatedly stabbed [the plaintiff] about the arms, hands, and body.  Under these allegations, we find that the stabbing was intentional.  While one might "accidentally" hit another with a knife during a spasmodic fit, the act of repeatedly stabbing [the plaintiff] under the allegations of this case denotes [the son]'s intentional assault.

*Id*. (emphasis added)  The Eleventh Circuit accepted the Florida Supreme Court's findings, and affirmed Allstate's motion for judgment on the pleadings.  *Allstate Ins. Co. v. Prasad*, 39 F.3d 1164, 1165 (11th Cir. 1994).

This Court should apply the reasoning in *Prasad* and find that, under the undisputed facts of this case, Small committed an intentional act when he repeatedly stabbed George, seriously injuring him.  Like the son in *Prasad*, Small attacked Mr. George with a deadly weapon and repeatedly stabbed him some 8-10 times in the chest and arms.  Like the Court found in *Prasad*, Ryan Small's "act of repeatedly stabbing [Mr. George] … denotes [Small]'s intentional assault." *See Prasad*, 644 So. 2d at 995.  Is it clear Small knew the pain and injury associated with stabbing or injecting sharp objects into the skin, given his admitted self-mutilation.  Moreover, the undisputed facts also show that Small repeatedly stabbed Mr. George while screaming "I gave you everything," as verified by George and Officer Whitfield.  Moreover, Small told Officer Whitfield, upon being asked why he stabbed George so many times, Small said, "I'm vicious like that."  These facts, coupled with the repeated stabbings, expressly show Ryan Small's intent to cause severe injury. *See Watson v. Ala. Farm Bureau Mut. Cas. Co.*, 465 So.

2d 394 (Ala. 1985) (finding the insured committed an intentional act when he walk up to the

victim's truck holding a gun, asked "What y'all done to [my daughter]?," and shot the victim

point-blank in the head).

**V.    Because the undisputed facts show illegal drugs were involved, coverage is precluded by a policy exclusion prohibiting coverage for injuries that arose "out of the use, sale, manufacture, delivery, transfer or possession" of a controlled substance.**

The Policy contains the following exclusion:

> SECTION II - EXCLUSIONS
>
> E.    Coverage E - Personal Liability And Coverage F - Medical Payments To  Others
>
> Coverages E and F do not apply to the following:
>
> . . . . . . . . . . . .
>
> 8.    Controlled Substance
>
> "Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812.  Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.  However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

It is clear that the plain language of the Policy excludes coverage for any loss "arising out of the

use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance."

*Id.*

The undisputed facts show that illegal drugs were involved in this incident.  Specifically,

photographs taken at the crime scene show the presence of illegal drugs and paraphernalia.  In

addition, toxicology reports show both George and Small tested positive for cocaine and other

narcotics.  These undisputed facts clearly and conclusively establish illegal drugs were present and used during the events at issue, regardless of any previous contention by George or Small.

Even the Assistant District Attorney, Nikki Patterson noted to the Criminal Court the incident was related to drugs and George was of the opinion drugs did not solely cause the actions, indicating drugs were related. *See* Hearing Transcript, attached hereto as **Exhibit N** at p. 8.  Logic and reason must prevail here, as this criminal activity is simply not insurable.[4]

## VI.   The parties to the insurance contract could not have contemplated coverage for this incident.

The Parties to the insurance contract could not possibly have contemplated this incident when entering into the agreement.  It is simply illogical, implausible and, frankly, ridiculous to suggest the incidents George alleges were contemplated by either GeoVera or the insured, Stanley Small.  A chaotic and illegal drug party and a violent stabbing resulting in serious, life threatening injuries are not considered insurable risks to either party.  *See* Affidavit of Carol Chervinko, attached hereto as **Exhibit O**.  *See also Cromeans,* 771 F. Supp. at 349.

THEREFORE, GEOVERA SPECIALTY INSURANCE COMPANY HEREBY REQUESTS A DECLARATORY JUDGMENT as to whether there is coverage available under HO Policy for the events and injuries occurring on or after April 1, 2009.

## CONCLUSION

It is shocking to contemplate there is even a dispute over homeowners' insurance coverage for this incident.  The criminal and bizarre activities of March 31/April 1, 2009 cannot possibly be insurable.  The cocaine use, the other drugs found in the home, the drug paraphernalia, the pornography, the self-mutilation to the genitalia by the insured and known to George and the ultimate stabbing events are vulgar, violent and indecent.  George participated in

---

[4] Interestingly, at this hearing Mr. George testified, the victim of a brutal assault, that he agreed with the decision not to prosecute Small <u>and</u> acknowledged his civil suit. *Id.* at p. 11.

some of these activities willingly, while being paid by Small.  Certainly, he did not deserve to be

violently attacked and stabbed; however, it is certainly folly to sue Small's estate for the injuries

given the illegal nature of the gathering and the activities which occurred there.  The Complaint

was drafted to create coverage where it does not exist.  George opened the estate to continue his

prosecution of the Complaint.  The only possible asset in the estate is the proceeds from this

policy.  Insurance was never meant to cover claims like this and to find coverage here would be a

terrible miscarriage of justice.

WHEREFORE, GeoVera prays:

1.     This Court enters a judgment declaring the rights and obligations of each   of   the

parties herein and with regard to the dispute;

2.     Grant GeoVera any and all further relief that this Court may deem proper.


Respectfully submitted,


/s/ *Christina M. Adcock*
CHRISTINA M. ADCOCK (NEH001)
*Attorney for GeoVera Specialty Insurance Company*


OF COUNSEL:
Adams and Reese LLP
P.O. Box 1348
Mobile, AL 36633
(251) 433-3234
(251) 438-7733 (Fax)
christina.adcock@arlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have on this the **23rd** day of **November**, **2011** a copy of the foregoing pleading was served on all parties to this proceeding by the court's electronic filing system and/or United States mail to the following:

Frank H. Kruse, Esquire
Administrator for the Estate of
Ryan Scott Small, Deceased
215 Cedar Street
Mobile, AL 36602

Lee L. Hale, Esquire
501 Church Street
Mobile, AL  36602
*Attorney for LaFredrique George*

James Brandyburg, Esquire
The Brandyburg Firm, PC
2607 Dauphin Street
Mobile, AL  36606
*Attorney for LaFredrique George*

*/s/ Christina M. Adcock*
COUNSEL