IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GEOVERA SPECIALTY INSURANCE CO. | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| V. | * | CASE NO: 1-10-cv-641 |
| | * | |
| THE ESTATE OF RYAN SCOTT SMALL, | * | |
| Deceased, and | * | |
| | * | |
| FRANK H. KRAUSE, | * | |
| | * | |
| Defendants | * | |

## DEFENDANT GEORGE'S BRIEF IN RESPONSE TO THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Defendant LaFredrique George (hereinafter "George") in response to the Plaintiff GeoVera's Motion for Summary Judgment sets out the following:

### ISSUES

1. GeoVera's summary judgment boils down to the two issues that are set out in the Complaint at paragraph 14: 1) "Expected Or Intended Injury" with its related issue of "assault or battery" and 2) Bodily injury "arising out of the use of a Controlled Substance."

**Response to GeoVera's Statement of Facts**

2. The only facts that relate to this summary judgment motion relate to the above two issues. GeoVera has set out many facts that do not relate to these two issues. GeoVera also violates the summary judgment principle of "viewing all of the facts in the record in the light

1

most favorable to the non-moving party." (Hereinafter "the Most Favorable Light Rule") <u>Hester v. North Ala. Center For Educational,</u> 353 Fed. Appx. 242 (11th Cir. 2009)

3. GeoVera cites only three paragraphs from the Complaint (Exhibit A) George filed in state court. These three paragraphs are either totally irrelevant to the Summary Judgment issues or, at best, have only remote relevance in support of George:

A. In the first 17 paragraphs, the state Complaint sets out the facts relating to the night in issue to show the relationship of George and Small and the progression of Small from sanity to insanity. Due to page limitations, George must incorporate almost all of the Complaint by reference only. However, if this Court reviews each of the first 17 paragraphs of the Complaint, this review makes clear that GeoVera's three complaint references violate the Most Favorable Light Rule. GeoVera sets out from the Fact section of the Complaint only Paragraph 12 which relates to the time when Ryan Small (hereinafter "Small") quit playing video games with George and went back to his room and began talking on the cell phone to his ex-girlfriend AJ. After a while George went to see what Small was doing and saw him sitting Indian style on his bed naked, wrapped in a bloody towel while Small was holding big needles. This paragraph has some remote relationship to the insanity issue as Small was using these needles to mutilate his private parts and to inflict pain upon himself, apparently to prove he could endure the pain. (George deposition Exhibit B  (hereinafter "G Depo), 77-78  Geovera implies that this paragraph of the Complaint relates to the "Arising out of Drugs" exception to the policy. There is no evidence that this self-mutilation episode relates to drug usage as the Plaintiff GeoVera will imply later in its brief and which will be addressed in greater detail below.

B. The next paragraph that GeoVera sets out is from the Causes of Action section in Count One: Negligent Infliction of Physical Injury. Paragraph 19 from the negligence count

relates first to a claim against Fictitious Defendants who negligently provided Small with

"dangerous instruments capable of inflicting severe injuries." With the death of Small, this issue

was not pursued and no fictitious party was substituted which means this issue is not a viable

issue in the state court. Clearly, this matter has no significance to this Summary Judgment

Motion. Paragraph 19 also relates to Small's negligence in not taking George to the hospital

from the time of the attack after midnight until about 4:00 PM, 16 hours. This negligence claim

was filed in the state complaint due to two facts: 1)no one knows when Small's psychotic

condition began as George was asleep when Small first injured him and 2) no one knows when

Small's mental condition began to clear up. Small's mental condition clearly changed after he

injured George. George set out in the Complaint at paragraph 15 his description of the psychotic

Small and testified that he could not recognize Small at this time: "even with me just looking at

him when he was stabbing me, I did not recognize the person that I was seeing." (G Depo 77-78)

This insane Small was a very different person from the one who helped George in the late

afternoon when Small drove George to Providence Hospital. (Small Answer "Exhibit C"

Paragraph 16) Obviously, Small's mental status had changed from the time he injured George to

the time in the late afternoon when Small literally saved George's life. (Ickler deposition

"Exhibit D" 8) Thus, during the time when Small stabbed George to the time he took him to the

Providence Hospital in the late afternoon, Small clearly violated the objective reasonable man

standard by failing to take George earlier to the hospital when George was near death, as much as

16 hours after the incident. However, there is no evidence of the time when Small's state of

mind changed from psychotic at the time of the incident to conscious but disregardful of the need

to save George's life ( a wantonness claim as set out in Paragraph 22 below). Paragraph 19 does

not relate to the two Summary Judgment issues of the "intentional inflicting of injury" issue or the "injury arising out of the use of drugs" issue but relates to a totally different issue: negligent failure to take George to the hospital when he was near death.

C. GeoVera sets out Paragraph 22 of the wantonness section of the Complaint which is the same as Paragraph 19 of the negligence section of Complaint set out above. Thus, the analysis of paragraph 19 applies to paragraph 22. Paragraph 22 of the Wantonness claim does not relate to the "intentional inflicting of injury" issue or the "injury arising out of the use of drugs" issue. GeoVera erroneously asserts that wantonness relates to the "intentional injury" exclusion. However, wantonness is not an intentional injury but is somewhere between negligence and intent. Ex parte Essary 992 So.2d 5 (Ala. 2007) sets out the definition of wantonness:

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury.

Ex parte Capstone Bldg. Corp., --- So.3d ----, 2011 WL 2164027 (Ala. 2011) sets out wantonness does not require proof of intent as GeoVera asserts and also sets out, again contrary to GeoVera, that assault requires proof of intent in some contexts:

> *6 " Our own cases likewise hold that the types of claims described in § 6–2–34(1) involve intentional harm to the plaintiff. See, e.g., Harper v. Winston County, 892 So.2d 346, 353 (Ala.2004) **(explaining that the unconsented touching in an assault and battery must have been done intentionally)**; Crown Cent. Petroleum Corp. v. Williams, 679 So.2d 651 (Ala.1996) (false-imprisonment case). In contrast, ' " '[w]antonness' has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." ' Bozeman v. Central Bank of the South, 646 So.2d 601, 603 (Ala.1994) (quoting Stone v. Southland Nat'l Ins. Corp.,

4

589 So.2d 1289, 1292 (Ala.1991)). ' **To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff.'** Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1256 (Ala.1998).

Clearly, a wantonness claim does not relate to the issues of "intentional injury" or "arising out of drugs." Thus, the 3 paragraphs of the Complaint GeoVera quotes from the 19 page complaint have either no relationship to the issues before this Court or, at best, remote relevance supporting George's Response. Furthermore, since the wantonness claim related to Small's state of mind and since he died before a deposition could be taken, there is no evidence of wantonness in this case, only breach of the objective standard of the reasonable man.

4. Next, GeoVera sets out in Paragraph 12 of its Brief a sketchy summary of George's deposition which minimizes the pre-incident relationship between Small and George which was a relationship of trust and mutual respect. (See G Depo 31 to 40) This fact is very important since the injury incident starkly contrasts with their previous relationship, a clear indication of Small's psychotic break with reality.

5. Next, GeoVera at Brief paragraph 13 dedicates the same time to the "napalm" event as GeoVera spent on the entire Small/George relationship. George described this clash: "He (Small) indicated to me that he had some coins missing and AJ (Small's girlfriend) told him that I got -- I took his coins." **(G depo 95).** George set out his reaction to the event: "But I just kind of let Ryan have his way with that. He was my friend. I didn't have anything to hide when it came to that." When George was asked if Small's behavior was odd, he testified: "It was odd in the sense of me and him never had any kind of disagreements before. But, no. I mean, I just think he was angry." Id. at p.97 This lone conflict between Small and George which occurred two months before the incident (Id. at 97) is the exception which proves the rule of their good relationship, and it does

not relate to "intentional injury" or "arising out of drugs" issues.

      6. GeoVera continues to violate the Most Favorable Light rule in Brief paragraphs 14, 15, and 16. Geovera summarized the events of the night in issue by viewing events from GeoVera's peculiar perspective which violates the Most Favorable Light principle. GeoVera in Paragraph 14 shows a mercenary relationship ("pay him $100") or a strange relationship ("requested George to stay in the adjacent bedroom to him. George thought this was a strange request"). Then GeoVera in Paragraph 15 again sets out the mercenary perspective ("George ran an errand for Small) and then the violent nature of Small at that time ("Small called his girlfriend or ex-girlfriend and they had a lengthy argument. Small began screaming into the phone."). In Paragraph 16, GeoVera sets out the same facts it set out in Paragraph 10 of the Brief where it quoted from Paragraph 12 of the complaint, the Small holding needles sitting on the bed incident. However GeoVera seems to relate this incident to the "arising out of drugs" issue as GeoVera states "In fact, George testified that he had seen Small with needles before and Small "indicated" he used the syringes to inject his testicles." Id. George testified that before this incident he had only seen Small horsing around and playing with needles, never sticking anyone or using them for drugs.(G Depo 75-76) George had never seen Small using the needles to self-mutilate himself before this incident as GeoVera implies, in Paragraph 16: "he had seen Small with needles before and Small "indicated" he used the syringes to inject his testicles." Id. at 75-76 The truth is set out below:

    Q.    And did that indicate that you **had seen Mr. Small with needles before**?
    A.    Yes, I have. And let me correct myself if I was -- answered that question. **I didn't see Ryan with syringes as far as with blood before doing that. I have saw him with syringes, but he would be just playing around like, here, let me stick you with this needle or something like that. But it was never a situation where I had saw Ryan do**

**anything to himself or me before as far as being like with blood involved. That was just a totally different level.** So I have seen him with syringes in his presence before, but
Q. Okay. **Do you know what he did with the syringes? Not this time, the previous times you have seen him.** I'm sorry.
A. **No.**
Q. Do you know **what he was doing with the syringes on this particular date?**
**A. Yes. He indicated that he was injecting himself in his testicles.**

Clearly, GeoVera errs when it joins a past event "he had seen Small with needles before" with an event on the date of the incident "and Small 'indicated' he used the syringes to inject his testicles." This version of George's testimony also seems to imply that George on the night of the incident saw Small "injecting his testicles" with the further mistaken implication of drugs. George's deposition makes clear that George is referring only to the night of the incident after Small's upsetting call with his former girlfriend AJ (see GeoVera reference to this event in Paragraph 15 of the Brief) when Ms. Small is self mutilating himself with the needles for pain, not for drugs. George testified that he does  does not know what Small does with cocaine and then makes clear that Small is sticking the needle into himself to cause himself pain.   George addresses this issue in his deposition by reading from a statement he made to Ms. Prine of the Mobile Police Department at p.77-78 of his deposition:

Now, **what he do with cocaine, I don't know.  Me, personally, I say he -- I say Ryan, he went all the way off the wall when that girl, AJ -- I'm talking about a whole nother level like the whole other thing, testicles and all this.** Man, I ain't going to lie to you, you know what I'm saying, **it made me feel uncomfortable.** I'm like look, I don't want to see this, Ryan. Ryan, don't let me and I don't look. You know what I am saying? . . .
Prine, she asks the question: **So what, he wants you to watch him while he does it?** George: . . . **he's just showing me how deep the needle, the pain and I don't get it. So he wants -- Prine: So he wants you to see how deep the needle goes into him? George: Yeah, I guess so. I don't know.**    G depo, 77-78

In conclusion, George made clear that he saw this use of big needles to self mutilate for the first

time the night of the incident as Small previously had only played around with the needles and

never stuck himself or anyone else in George's presence. This event the night of the incident

does not relate to either the "intentional injury" issue or the "arising out of drugs" issue.

7.  To confirm further that the needle event on the night of the incident did not relate to

cocaine and that George was in no way involved in the issue of cocaine, the Court should review

the transcript of the hearing when the state confessed that Small was insane at the time of the

incident.  At the same hearing, Small's attorney Donald Friedlander plead Small guilty to

Possession of Cocaine due to the fact that when he acquired the cocaine he was not insane.  The

prosecutor in the Small case, then Chief Assistant Ms. Patterson, also made clear the difference

between the Insanity Plea regarding the Attempted Murder Charge and the Guilty Plea to Cocaine

which is set out at p. 17 of the transcript "Exhibit E":

> MS. PATTERSON: The theory here, Your Honor, is that **he came into possession of this
> cocaine prior to the complete break with reality that is the basis of the not guilty by
> reason of insanity,** that he had had the cocaine in his possession for a couple of days.

To confirm that these drugs were solely Small's drugs, Mr. Friedlander stated in the presence of

Small:

> MR. FRIEDLANDER: **Judge, I would point out at this particular time that after
> lengthy conversations with the defendant between all three counsels here that we
> have determined that this incident that occurred was at -- with no fault of the
> victim. It was all accomplished because of Ryan Small's actions, and that all of the
> drugs involved here were Ryan Small's drugs. It had nothing to do with the victim.
> P. 11 of transcript**

These facts make clear that GeoVera has violated the Most Favorable Light rule in inferring that

the self mutilation event relates to drugs when it relates to self-inflicted pain.

8.  GeoVera then addresses "C. The Coverage Matter" in paragraph 19, "photos show

rooms in disarray, blood. ."  These photos show the scene many hours after the incident and can

8

only have relevance to the two issues if the photos depict the house's condition at the time of the incident. Surely, Small dragged George's bloody body around the house after the incident as he was losing consciousness. (G depo 82) Apparently, Small dragged George's unconscious, bloody body around the house after the incident as blood was everywhere:

> I observed apparent bloodstains on the floors, walls, chairs, and table in the breakfast dinning room near the kitchen of the residence. I observed apparent bloodstains on the counter and kitchen cabinets. I observed a large rug rolled up on the floor between the kitchen and breakfast dinning room. I observed apparent bloodstains on the floor throughout the residence from the front door and garage door entrance to the master downstairs bedroom. I observed apparent bloodstains on the floor of the living room and at the bottom of the stairs on a blue chair by the master bedroom. Inside the master downstairs bedroom, I observed the bedding on a bed in the room covered with apparent bloodstains. Officer Charles A. Miller, Jr statement "Exhibit F".

Although GeoVera set out photos of the chaotic house, this evidence when viewed from the perspective of George supports the fact that Small was insane at the time of this incident. When a person stabs another and then drags his bloody, unconscious body all over the house and apparently puts the unconscious body in the bed, Geovera Ex J "Exhibit G" this evidence supports insanity, not intent.

9. Furthermore, the photos of drug paraphernalia around the house when viewed in a light most favorable to George reflects Small's injecting cocaine into George after the incident. Officer T. Whitfield reported a statement from Small contained in the Case Brief from Angela Prine on April 1 at 1555 hours (GeoVera Exhibit J) as follows: "The suspect stated he shot the victim with cocaine from a bag at his home because he was in so much pain." This statement could only be admissible to prove that Small's state of mind is clearly addled at best at this time on April 1 at about 4:00 PM. Small was an attorney who was admitting to the police not only

that he possesses cocaine but that he has injected cocaine into his victim to relieve the pain Small inflicted. This statement constitutes an admission in one sentence of a number of different crimes, including Assault and Drug Possession and Distribution. Clearly, any attorney in his right mind would not set out such a statement to a police officer. Small's mind was no longer totally psychotic but was clearly addled, leading him to conclude that this story showed that he was compassionately relieving George's pain. This statement reflects the person who had earlier created the chaotic scene at the house after the incident, a further reflection of Small's psychotic mind.

10. With certain rare exceptions, close analysis reveals that these hearsay exhibits do not relate to the two issues before this court since Small created this mess during the almost 16 hours after the incident. Officer Miller's statement of blood everywhere in Small's residence indicates that this mess occurred after the incident since the blood is apparently the blood from George, not Small, who had only a "1-2 inch cut on the suspect's index finger." GeoVera Exhibit J  George also testified that he did not see Small do any cocaine: "Now, what he do with cocaine, I don't know." G depo 77.

11. George's attorneys object to Exhibit I which GeoVera sets out in Paragraph 21 as it purports to be a Providence Hospital record of a drug screen for George. However this mystery record did not come from the records of Providence Hospital. The records of Providence Hospital have a different drug screen for  George which sets out no drugs. This "Providence Hospital" record which GeoVera sets out as Exhibit I is a mystery presently which the Defendant's attorney in state court, Ms. Reeves, addressed in the deposition of Mr. George's surgeon, Dr. Ickler. The drug screen from Providence Hospital is Exhibit 1 to the Ickler

deposition and the "mystery" exhibit which is not from Providence Hospital medical records but from Mobile Police records is Exhibit 2. The Ickler deposition makes these assertions clear as Defendant's attorney Ms. Reeves questions Dr. Ickler:

> **Q**      **This is a document that we got from Providence Hospital. It's a laboratory report and we've Bates' labeled it PH00326.** That's just our way of saying it came from Providence Hospital and we have at least 326. And can you identify that document for me?
> **(DEFENDANT'S EXHIBIT 1** WAS MARKED FOR IDENTIFICATION.)
> A      Yeah, this, I believe, is the **serum drug screen** that would have been -- I'm trying to see when this came in. **It looks like this may have been during the second day of his hospitalization, but I think they would have probably gotten one in the emergency room, too. Maybe that's just when this was corrected. It's a drug screen result.**
> Q      Okay. And what is a serum drug screen?
> A      That means rather than a urine sample or a hair sample for a drug screen, this was taken from blood.
> Q      And what is the difference in this type of result reading that you get between a urinalysis drug screen and a serum drug screen?
> **A      I think you can test for more with a serum drug screen than you can with a urine drug screen.. . .**
> Q      I'm going to show you **another document and this one is marked MPD-M000083,** and that means that it was produced to us pursuant to a nonparty subpoena by the Mobile Police Department with regard to this whole incident. However, it's a Providence Hospital document and **I'll represent to you that it did not come in the Providence Hospital records and nobody seems to be able to find it.** We keep calling them and asking them. They're going to look and if they find it, I'll let you know, Lee. . . My next question is -- I don't know how to read this, but on **Defendant's Exhibit 1**, does it say on there "Drug screen (nonforensic) serum." Do you read that on there?
> A      Yes.
> Q      And what does it say underneath that?
> A      It says **"No drugs identified".**
> **Ickler deposition, P.55-60 Defendant's Exhibits 1 and 2. "Exhibit B"**

Exhibit 1 to the Ickler deposition, the drug screen test contained within the Providence Hospital records, shows "no drugs identified." The mystery record, Exhibit 2 to the Ickler deposition which is GeoVera's Exhibit I and which shows a positive screen, is not contained in the records of Providence Hospital and is not admissible as a medical record from Providence Hospital.

11

12. GeoVera attached a number of documents which are statements from Ryan Small in Paragraph 23. Almost all of these documents cannot be presented in a form that would be admissible in evidence and are objectionable under Rule 56(c)(2)(FRCP). The Small statements are self serving hearsay which were clearly withdrawn when Small plead and the state admitted the Not Guilty by Reason of Mental Disease or Defect which under Alabama law is an admission of the commission of the acts of the underlying offense, Attempted Murder in this case. Dotch v. State, 67 So.3d 936 (Ala. Crim. App. 2010) set out this principle of law:

> The trial court's original instructions substantially followed the Alabama Pattern Jury Instructions. See Alabama Pattern Jury Instructions: Criminal 1.9 (3d ed. 1994) ("[I]f you **find that the State has proved beyond a reasonable doubt each of the elements of the offense charged, then you must go further and consider the defendant's defense that he nevertheless is not criminally responsible as a result of a severe mental disease or defect.").**

13. If this Court considers the portion of Paragraph 23 of the GeoVera Brief which sets out the inadmissible Small statement summarized in the Alabama Uniform Incident/Officer Report, the Court should then consider all of this inadmissible evidence in Exhibit J. The Police statement set out at the end of Paragraph 23 of the Geovera brief is set out with the omitted parts of the statement set out in bold print. Officer T. Whitfield set out these statements that describe the state of mind of Small which are within the Angela Prine MPD Homicide Unit report dated 4/1/09 in GeoVera Exhibit J.

> **I responded to a call at Providence Hospital involving a stabbing. . . Upon arrival, a white male subject covered in blood on his hand, feet, and clothes approached me**. The suspect stated that he stabbed the victim **Fredri M. George** several times **for robbing him. I stopped the subject from continuing to speak. I read the suspect his adult Miranda rights. The Suspect continues talking advising that he and the victim were friends and the suspect was the victim's lawyer. The suspect advised that the . . . victim came to his home on 4/1/09 at 8:00 Hours. The suspect allowed the victim inside his home. The suspect stated the victim had a bag of cocaine and placed it on**

**the living room table.  The victim went into the suspects' bedroom and put the suspect's wallet and credit inside his right back pocket.  The suspect said he confronted the victim and the victim tried to stab him with his pocket knife. The suspect said he was cut once on his left first finger with the knife.  The suspect said he managed to defend himself by taking the knife from the victim and stated he stabbed the victim several times.  I noticed a small 1 - 2 inch cut on the suspect's index finger.**

I left from my location to check on the status of the victim. The ER doctor adised [sic] that the victim was in critical condition with multiple stab wounds on his body. The ER doctor stated that the victim lost a lot of blood and flat-lined twice. The victim was taken to emergency surgery. I returned to my squad car and was told by the suspect that he was advised not to speak. I was advised to transport the suspect to police headquarters (unit 845). When transporting the suspect, he began to talk saying that he did everything for the victim. He said he was tired of victim using him, taking advance of him and treating him badly, the suspect also stated that he purchased the victim a car and gave him several thousands of dollars to help him with medical bills for the victim's son. I asked why did he stab the victim so many times. He replied "I'm vicious like that." ...The suspect stated he shot the victim with cocain [sic] injections from the cocaine back at the home. ...**The suspect stated after he stabbed the victim, the victim begged him not to call the police.  The suspect stated the victim bled all over his house.  The suspect stated that he helped the victim to his bedroom and put him on his bed.  The Suspect stated he shot the victim with cocaine injections from the cocaine bag at the home.  The suspect stated that the victim took a bottle of xanax pills prescribed to him.  The suspect stated that he was ready to die and would kill himself by the end of the week.**  The suspect stated that he mutilates his genitals all the time and wanted to show me. ...

**The suspect changed his story by saying the victim came to his house and played the xbox video game.  The suspect stated he was in the front room and heard someone in his bedroom.  The suspect said he noticed the victim going through his closet.  When the suspect asked the victim what he was doing, he noticed items in the pockets of the victim.  The suspect said the victim tried to stab him and he defended himself. The suspect stated that he was trained by special forces in marshall arts.**  The suspect stated "if the victim dies, he dies." **The suspect stated that he helped the victim from his bed, into his vehicle and transported him to providence hospital.**

An analysis of this summary of Small's initial statement to the police reveals the clearly still

addled mind of this attorney.  First, Small who is covered in the blood of a dying man sets out he

"stabbed the victim **Fredri M. George** several times **for robbing him.**" Next, Small sets out

**"that he and the victim were friends and the suspect was the victim's lawyer."** Next, "The

13

suspect allowed the victim inside his home. Next, **the suspect said he confronted the victim and the victim tried to stab him with his pocket knife. The suspect said he was cut once on his left first finger with the knife. The suspect said he managed to defend himself by taking the knife from the victim and stated he stabbed the victim several times.** After the officer left Small to check on George and then returned, Small's story changed from one of self defense to one of apparent retaliation due to anger:

> "When transporting the suspect, he began to talk saying that he did everything for the victim. He said he was tired of victim using him, taking advance of him and treating him badly. . I asked why did he stab the victim so many times. He replied "I'm vicious like that."

Within minutes, Small had gone from self defense to vicious, vindictive attacker. Then Small goes from vindictive attacker to bizarre treater of George's pain who did as George requested of him despite the fact that George was bleeding all over his house when he told the officer that "he shot the victim with cocain [sic]" to treat George's pain by shooting him with cocaine and then he did not call the police but put the beggar robber in his bed: **The suspect stated after he stabbed the victim, the victim begged him not to call the police. The suspect stated the victim bled all over his house. The suspect stated that he helped the victim to his bedroom and put him on his bed."** Then Small reveals a bit of the insane, psychotic Small which was fully present about 16 hours ago when he says: **"The suspect stated that he was ready to die and would kill himself by the end of the week. The suspect stated that he mutilates his genitals all the time and wanted to show me."** Then the officer sets out a truly bizarre series of statements from Small which does relate to proof of his earlier insane state of mind from the previous night:

> **The suspect changed his story by saying the victim came to his house and played the xbox video game. . . . The suspect stated that he was trained by special forces in**

14

**marshall (sic) arts.**  The suspect stated "if the victim dies, he dies."  **The suspect stated that he helped the victim from his bed, into his vehicle and transported him to providence hospital.**

The bold parts of the Small statement which GeoVera omitted from Paragraph 23 show a totally different picture of Small.  The GeoVera citations of the Small statement depict a vicious attacker who intentionally stabbed his victim, almost to death.  The complete statement which include the omitted sections in bold print clearly relate back to the insane Small whose mental disease caused him to injure George.

### Facts Which Correctly Apply Summary Judgment Standard of "Viewing All of the Facts in the Record in the Light Most Favorable to the Non-moving Party."

14. George urges this Court to review the George Deposition from p. 31 to 38 as this testimony shows a close and trusting relationship between George and Small before the incident.  They talked on the phone every other day. (G Dep 42)  Small invited George to visit him at first when he was living at his parent's house. (G Dep 32-37)  While Small was living at his parent's house, George stayed at Small's parents' house a couple of times per month.(G Dep 37)  After Small moved out of his parents' house and into his house on Ashmoor Dr, the scene of the 4/1/10 stabbing, George spent the night once a month at Small's house. (G Dep 37)

15. On the day of the incident, Small called George later in the day, and he told George that he was having a very bad day and that he wanted George to come over. (G Dep 46)  George refers the Court to G Depo 46, 48, 49-85 which are the events of the night.  These events make clear that George came over to see Small because he "was my friend" and he was "concerned about him." (G Dep 50)  George said that he felt that Mr. Small sounded "kind of sad and I just thought by me coming over I was more or less. . . flattered that if my presence will help you

better, man, then I'm all for it." (G Dep 50)  George acted as a true friend caring for a friend in need.

   16. Small answered the complaint and admitted the parts of the complaint that are related to this federal civil action.  The Complaint and Answers are attached.  Paragraph 15 of the Complaint relates to the "intentional injury" issue.  George was awakened later that night at or after midnight on April 1, 2009 when he felt a sharp pain hit his side while he lay asleep on the sofa . . .to ask Small if he had just stuck him with one of the big needles.  <u>When George looked at Small . .  George saw Small's body was shaking while he was looking at George.</u> . . George then jumped up from the sofa and staggered towards the kitchen table where Small stuck him more times.  <u>While Small was stabbing the George, George heard  Small making nonsensical statements about a card and then saying repeatedly to  George the same nonsensical statement over and over, "I give you everything, I gave you everything, I gave you everything."</u>  Finally, George passed out. Small admitted that he stabbed George shortly after midnight on or about April 1, 2009. Paragraph 15 of the Complaint.  In his Deposition, George remembered a few more facts:

> "I remember being dragged through the house. When I looked, I remember looking at Ryan.  And when I looked at Ryan, I didn't see Ryan. Like I saw -- I mean, this guy is sweating, he's shaking  and - Excuse me, but, you know, this is like I don't want to relive this, you know. I know we've got to do this. But it's -- I don't want to take myself back to that, you know? It's very -- it's" (**G dep p. 82 2-10**)

> I have been around Ryan numerous times before this incident. We've been in different situations, day and night, here, out of town, and I've have never seen him act that way. Never. It just seemed to me like it was more than what I could understand at that time. I just could not grasp -even with me just looking at him when he was stabbing me, I did not recognize the person that I was seeing. **G dep 100**

After George lay unconscious for hours in Small's residence,  Small admitted that he took

16

George to the emergency room of Providence Hospital in Mobile, Alabama sometime between

3:00 P.M. and 4:00 P.M. on or about April 1, 2009.  <u>Answer to Paragraph 16 of Complaint.</u>

17. The most important part of the verified complaint which GeoVera obviously did not

set out to this Court since GeoVera is violating the "Most Favorable Light rule is paragraph 17:

17. The Plaintiff George has reviewed the events of the day of March 31st when he first saw the Defendant Small to the day of April 1, 2009 when Defendant Small stabbed him and many hours later took him to the emergency room for treatment.  After reflecting on these events **George asserts that Defendant Small was suffering from a serious mental disease or defect which prevented him from forming any specific intent to injure the George when this attack occurred.  After reflecting upon that night of March 31st when George first saw Mr. Small, Defendant Small seemed to be a different person from the friend George had known in the past few years, apparently due to the onset of serious mental problems that George had witnessed occurring during the time when he was stabbed.  When  George saw Defendant Small stabbing him on or about April 1st, George knows that Mr. Small did not act like himself but seemed to be a different person.  At that time, Defendant Small looked like a crazy or deranged person and acted like a crazy or deranged person while he stabbed  George and sounded like a crazy or deranged person as he made repeated nonsensical statements to the George while stabbing him.  For this reason, George does not contend that Mr. Small intentionally stabbed or assaulted him when he stabbed George on or about April 1, 2009.  Instead when Mr. Small was stabbing George, Small seemed to be an insane person who was so deranged that he was incapable of distinguishing right from wrong with respect to the stabbing of George. Defendant Small at the time of the stabbing seemed to George to be incapable of entertaining or forming the intent or of having a conscious design to injure George.  During this time of the stabbing, Defendant Small did not appear to have control over his faculties of mind and body, and Defendant was not of sound mind.  George could not have foreseen that Defendant Small's mental faculties could have become so deranged as he had never seen any such behavior from Defendant Small in the past and thus the stabbing of George resulted from something unforeseen, unexpected, and unusual which did not take place according to the usual course of things.  The violence that Defendant Small inflicted upon George was done by Defendant Small without Defendant Small's design or intent but due to his deranged condition at the times set out in this complaint.**

**<u>The Defendant Small admitted that Defendant did not intentionally stab or assault George</u>**

17

**on or about April 1, 2009. Answer to Paragraph 17 of Complaint.**

Obviously, the only two witnesses to this event are George and the decedent Small who both

have set out the stabbing was not intentional, substantial evidence relating to the first issue.

18. The fact that Small's mental disease or defect, not his intent, caused George's serious

physical injuries is confirmed in the transcript of the judicial proceeding in which Small was

determined to have been insane at the time he stabbed George:

> 4-15 MS. PATTERSON: Their plea is not guilty by reason of insanity, to which, based on a lot of very unusual circumstances in this unique case, the State will confess the not guilty by reason of insanity and concur in that.

> 5-2 Ms. PATTERSON: It's the defense burden, but from the State's perspective, unlike many people who come in and plead not guilty by reason of insanity, Mr. Small has a well-documented long-term history of confinement in mental hospitals. He has a very serious diagnoses that have stayed with him for a long period of time.
> In addition to that, he has several times, probably more than several, attempted to take his own life. He has a history of very extreme self-mutilation, including an episode that occurred at the same time frame as this charged crime which resulted in extensive reconstructive surgery to the defendant. The defendant, in fact, has been hospitalized two or three times since this incident and was found, at least on one of those occasions, to not be appropriate for the inpatient program because he threatened harm to his counselor. The -- his treating psychiatrist of the last several years has provided the Court and the State with a statement that, in his opinion, Mr. Small --
> THE COURT: This is from Dr. Stephen Lyrene. Go ahead.
> MS. PATTERSON: -- that he was not cognizant of his actions or the difference between right or wrong at the time of the offense and is still a present danger to himself or others. To that, I will add that in this case the only witness to this act is the victim -- of the offense, Mr. Lafredrique George, who is here represented by his two attorneys. .Mr. George and I have spoken and I have also spoken several times with his attorneys. And it is Mr. George's very strong opinion, having been a friend of the defendant's for some period of time, that the defendant, at the time of these events, was not in his right mind, was, in fact, insane and could not discern the difference between right and wrong. He has, in fact, filed such a pleading, a pleading in civil court that in a very lengthy way sets out -- And I would mark that as State's Exhibit 1.(State's Exhibit Number 1 was Marked for Identification.)MS. PATTERSON: -- in a very lengthy way the events that happened on this occasion. And his opinion of And y'all have a copy of that. and his opinion of the defendant's lack of cognizant mental state. In it, he states that the defendant called him the

night preceding this event. This event happened in the early morning hours. That he called him. He was having delusions at that time.He called and represented to the victim that he felt that people were outside of his house attempting to get in and attempting to kill him based on a fairly convoluted conspiracy having to do with his father's business affairs.          The victim went over as a friend to see if he could help calm him down. At some point during the evening, Mr. George found the defendant mutilating himself fairly egregiously. He was able to get that to stop. He later goes to sleep on the couch and awakens to find himself being stabbed.

THE COURT: That's when the stabbing took place?

MS. PATTERSON: Yes, sir. .

THE COURT: -- Lyrene says that he has psychoaffective disorder bipolar type and it's his opinion that as a result of his mental disease or defect he is unable to appreciate the nature and quality or wrongfulness of his acts. So on the basis of all this, the State concedes that he is guilty by reason of mental disease or defect.

MS. PATTERSON: Yes, sir.

THE COURT: And so does the defense --Travis, mark this as Court's Exhibit -- no, Defense Exhibit 1. (Defense Exhibit Number 1 was Marked for Identification.

MS. PATTERSON: The State is prepared to have Mr. George verify for the Court that that is, indeed, his opinion and that he stands by everything that is in the extensive pleading. . .

THE COURT: And you understand now that there will be no prosecution for the attempted murder. . .

This adjudication of Small's insanity plea establishes that when he stabbed George "**at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts.** Section 13A–3–1, Ala. Code 1975. Small proved by clear and convincing evidence that at the time of the commission of the acts relating to the stabbing of George that Small, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts. Since Small proved this fact, his act was not an intentional act of a sane person but was the product of mental disease or defect.

## LAW

19. The fact that Small was adjudicated to be Not Guilty by Reason of Mental Disease or

Defect and the fact that the only two witnesses to the incident set out that Small was insane at the time of the attack and did not have the capacity to intend to injure George is a dispute of material fact and thus a genuine issue for trial. Since the "evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor, <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255 (1986), this Court should find that there is a genuine issue for trial that this insurance policy is not excluded due to the intentional acts and its related assault or battery exclusion.

20. Small was adjudicated Not Guilty by Reason of Mental Disease or Defect of the Attempted Murder charge in which George was injured. In <u>Knight v. State</u>, 907 So.2d 470 (Ala. Crim. App. 2004) the Appeals Court set out the law on this matter:

> Section 13A–3–1, Ala. Code 1975, provides:
> "(a) It is an **affirmative defense** to a prosecution for any crime that, **at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts.** Mental disease or defect does not otherwise constitute a defense.
> Subsection c sets out the burden of proof:
> "c. **The defendant has the burden of proving the defense of insanity by clear and convincing evidence.**"

This law makes clear that Small had to prove by clear and convincing evidence that at the time of the commission of the acts relating to the stabbing of George that Small, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts. Since Small proved this fact, his act was not an intentional act of a sane person but was the product of mental disease.

21. Since jurisdiction in this case is based on diversity, this Court will look to Alabama law on similar cases of insurance coverage. The Courts in Alabama law look to subjective intent of the insured when examining whether the coverage is excluded due to the intentional act

exclusion. <u>State Farm Fire & Cas. Co. v. Middleton</u>, 65 F. Supp.2d 1240 (M. D. Ala. 1999)

Thus, if Small suffered from a mental disease when he attacked George there was no subjective

intent to invoke the "intentional acts" exclusion of coverage. In <u>Home Ins. Co. v. Pugh</u>, 51 Ala.

App. 373, 286 So.2d 49 (Ala. Civ. App. 1973), the Appeals Court set out Alabama law on this

issue:

> A well recognized exception to the general rule is that if the insured *376 **51
> was insane at the time he wilfully or intentionally caused the fire, the insurer
> remains liable on the policy. In other words, the burning of the property by an
> insane insured does not release the insurer from liability in the absence of any
> policy provision to the contrary. This is because **the insane party is deemed to
> be incapable of entertaining a fraudulent intent or of having a conscious
> design to destroy the property.** Couch on <u>Insurance</u> 2d, s74:662; 44 Am. Jur. 2d,
> Insurance, s1365; <u>Bean v. Mercantile Ins. Co. of America</u>, 94 N.H. 342, 54 A.2d
> 149; <u>Bundle v. Kenton County Assessment Fire Ins. Co.</u>, 128 Ky. 389, 108 SW.
> 325; <u>Arow v. Continental Ins. Co.</u>, 57 Wis. 56, 15 NW 27; Anno. 110 A.L.R.
> 1060. (Emphasis supplied)

Obviously, the court in the Small criminal case adjudicated that at the time that Small injured

George his actions were due to severe mental disease or defect which means that under the law of

Alabama as set out in <u>Pugh</u> that Small was incapable of forming the intent to injure George and

was  unable to appreciate the wrongfulness of his acts.  Thus, the adjudication that when Small

injured George that his acts arose out of his mental disease and were not intentional acts is

substantial evidence that should result in a denial of the GeoVera Motion for Summary

Judgment.  Like Small, the insured in <u>Pugh</u> was insane when he committed the act which

invoked the insurance coverage and thus the intentional act exclusion does not apply as a matter

of law in Alabama.

22. Next, GeoVera invokes the assault and battery exclusion like the insurance company

in <u>Acceptance Ins. Co. v. Brown</u>, 832 So.2d 1 (Ala. 2001).  The Supreme Court reviewed the

same "intentional acts" exclusion and an "assault-and-battery exclusion:"

> In this case, there was **conflicting evidence** as to whether Scott's injuries arose out **of an assault or battery or were the result of negligent or wanton conduct on the part of Gloria Brown."** . . .**Scott's complaint did not allege that Scott's injuries arose from an assault and battery; instead, he claimed damages arising from alleged negligence and wantonness on the part of the Browns.**

The Court set out that this issue was for the jury.  See also the recent cases of O'Rear v. B.H., 69 So.3d 106 (Ala. 2011) and Ex parte American Heritage Life Ins. Co., 46 So.3d 474 (Ala. 2010) defining assault as "[A]n **intentional, unlawful** offer to touch the person of another in a rude or angry manner. . ." The Not Guilty by Insanity adjudication makes clear no "intentional, unlawful" act occurred in our case.

23. GeoVera's second issue relates to the exclusion of "Bodily injury" arising out of the use . . or possession by any person of a Controlled Substance."  GeoVera has alleged that the "arising out of drugs" exclusion applies to this case.  This exclusion does not apply as there is no evidence that the use or possession of a controlled substance caused the injuries George suffered. Since the state court adjudicated that Small was insane, this finding presents substantial evidence that George's injuries did not "arise out of drugs" but arose out of his mental disease. Even if Small was on illegal drugs at the time when the incident occurred, there is no evidence that drugs caused this injury.  The Insanity Finding makes this clear.  First, "Voluntary intoxication 'is not a defense to a criminal charge,' § 13A–3–2(a). . . Second voluntary intoxication in and of itself does not 'constitute a severe mental disease or defect for insanity purposes. Albarran v. State,--- So.3d ----, 2011 WL 3211525 (Ala. Crim. App. 2011)  Since drug taking which even rose to the level of intoxication cannot constitute evidence of mental disease under Alabama law, the trial court was not permitted to consider that Small's taking of drugs, if he did, could have contributed

22

to his insanity. <u>Albarran v. State</u>, (<u>id.</u>)  If drugs do not enter into a finding of insanity, and if the

person is found to be insane, then clearly the court's adjudication that Small's insanity caused the

acts which hurt George constitutes substantial evidence that Small's stabbing of George was not

caused by his use of drugs even if Small was taking drugs at that time. Small's mental disease

caused the attack, not drugs.   Another basis for rejecting the drug exclusion is the fact that the

policy exclusion does not clearly and unambiguously apply to this case.  In <u>Industrial Chemical</u>

<u>& Fiberglass Corp. v. Hartford</u>, 475 So.2d 472 (Ala. 1985), our Supreme Court answered a

certified question from the Northern District of Alabama regarding an "arising out of" exclusion.
First, the Court set

out the general law relating to this issue:

> A familiar rule is that insurance policies are to be construed in favor of the insured. This
> principle is most rigorously applied in considering the meaning of exclusions
> incorporated into a policy of insurance. See <u>Grahame v. Mitchell,</u> 28 Ill.App.3d 334, 329
> N.E.2d 17, 22 (1975) 'Ambiguities are to be resolved in favor of coverage; exclusions
> from coverage are to be construed narrowly.'); and <u>Dawe's Laboratories, N.V. v.</u>
> <u>Commercial Ins. Co.,</u> 19 Ill. App.3d 1039, 313 N.E.2d 218, 219, 225 (1974)

The Court addressed the meaning of the "arising out of" clause:

> . . . an exclusion contained in a vendor's endorsement excluding from coverage
> **"injuries arising out of** any act by a vendor which changes the condition of the
> product," **applied only to injuries for which there was proven a causal**
> **connection** with the change made by the vendor. <u>Employers Insurance of Wausau,</u>
> <u>supra,</u> at 745.

The court ruled that Hartford must prove that the repair operation <u>caused</u> the bodily injury.  In

our case, GeoVera has offered no evidence that if Small had controlled substances within him

when he stabbed George, that the controlled substances caused George's bodily injury.  Thus,

GeoVera fails to present any evidence of this essential causation issue to prove this exception and

its summary judgment motion should be denied.

23

GeoVera in Footnote 2 on p. 14 again sets out the previous error it made in an earlier brief when it sets out that the Not Guilty by Reason of Mental Disease or Defect "was never verified as established by the Alabama Rules of Criminal Procedure because of Small's death. He was never institutionalized, nor was he evaluated post-finding." The State went into great detail regarding the basis for the State's admitting Mr. Small's Pleas of Not Guilty by Reason of Mental Disease or Defect which the court accepted when the court adjudicated that Mr. Small bore his burden of proving by clear and convincing evidence that his insanity caused the attack. After the Court considered the facts which the State set out, the court adjudicated Mr. Small as having proven the mental disease or defect defense set out at Section 13A–3–1, Ala. Code 1975 which is not in dispute.  As a matter of law, the adjudication of Not Guilty by Reason of Mental disease or defect is by clear and convincing evidence. Subsection c of Section 13A–3–1, sets out the burden of proof: "The defendant has the burden of proving the defense of insanity by clear and convincing evidence."

GeoVera sets out its its mistaken conclusion in Footnote 2 on page 14 that the insanity adjudication was never verified as established by the Alabama Rules of Criminal Procedure because of Small's death since "he was never institutionalized, nor was he evaluated post-finding."  This error confuses the completed Insanity adjudication in the criminal case with the post Insanity civil process which requires the court to determine in a civil action after the criminal case is concluded by Not Guilty by Insanity to determine if  "there is probable cause to believe that the Defendant is mentally ill" as required by Rule 25 of the Alabama Rules of Criminal Procedure.  The Plaintiff mistakenly believes that this post criminal case Rule 25 issue in some way is to verify the Insanity adjudication.  A review of the title of Rule 25 makes clear

this error:

> "RULE 25: PROCEDURE AFTER VERDICT OR FINDING OF NOT GUILTY BY
> REASON OF MENTAL DISEASE OR DEFECT:
> (a)"If the defendant is found not guilty by reason of mental disease or defect. . .
> the court shall forthwith determine whether the defendant should be held for
> hearing on the issue of his involuntary commitment under Rule 25.3.

This civil process can only take place after the Defendant is adjudicated as Not Guilty by Reason of Mental Disease or Defect.  However, since Mr. Small admitted that he met the probable cause requirement set out in Rule 25.2(b), the court did not have to have a civil commitment proceeding pursuant to Rule 25.3.  This matter is set out to its conclusion in Cooley v. State, 695 So.2d 1219 (Ala. Cr. App. 1996)

In order to gain release from the Department's custody, a defendant acquitted of a criminal charge on the ground of insanity must prove by a preponderance of the evidence that he or she is no longer mentally ill and no longer poses a danger to himself or herself or to others. Carlisle v. State, 512 So.2d 150 (Ala. Cr. App. 1987); Knight v. State, 460 So.2d 876 (Ala. Cr. App. 1984). See Rule 25.8(f), Ala. R. Crim. P. ("If after conducting the hearing, the court determines that the defendant is no longer mentally ill or no longer poses a real and present threat of substantial harm to himself or to others by being at large, the court shall order the defendant's release."). Thus, the Plaintiff mistakenly relates the Not Guilty by Reason of Mental Disease or Defect adjudication of Mr. Small in the criminal case as dependent in some way on the subsequent procedure of civilly committing Mr. Small "if the court determines that there is probable cause to believe that the defendant is mentally ill and as a consequence of such mental illness poses real and present threat of substantial harm to himself or to others, the court shall order the defendant confined. . ."  Rule 25.2 (b)  The fact that the court found Mr. Small was

25

probably mentally ill presently in the subsequent civil action and any commitment which would have occurred but for the death of Mr. Small does not relate to his state of mind at the time he stabbed Mr. George but to his present state of mind when he was before the court many months after the stabbing which is not relevant to this case.

The cases GeoVera cites are not relevant to our case. In St. Paul Ins. Co. of Illinois v. Cromeans, 771 F. Supp. 349 (N. D. Ala. 1991) and in Horace Mann Ins. Co. V. Fore, 785 F. Supp 947 (M. D. Ala 1992) and State Farm Fire and Cas. Co. v. Davis , 612 So.2d 458 (Ala. 1993) all the Defendants were convicted of criminal sexual offenses which proved they intended to do the act which was clearly excluded under the "intentional act" exclusion of the policy, totally different from our case. Finally, GeoVera ignores Alabama law generally on the issues before this Court and does not even refer to the specific case which George cited earlier to this court in his brief above and also earlier set on in George's brief on the Collateral Estoppel issue, Home Ins. Co. v. Pugh, 51 Ala. App. 373, 286 So.2d 49 (Ala. Civ. App. 1973). Pugh clearly supports George's position that an insanity findinng is substantial evidence that Small did not intentionally injure George. Since GeoVera cannot find any Alabama law which supports its erroneous argument that the "intentional acts/ assault" policy exclusions applies to our case, GeoVera only cites Florida law in Allstate Ins. Co. v. Prasad, 39 F.3d 1164, 1165 (11th Cir. 1994) which apparently conflicts with Alabama law and thus is not applicable to this diversity case.

This Court should deny the Motion for Summary Judgment due to the fact that the Defendant George has presented substantial evidence that the two policy exclusions which are the basis of this Motion for Summary Judgment do not apply to the facts of this case and thus

26

GeoVera has failed to prove as a matter of law that these two policy exclusions exclude coverage.

/s/ Lee L. Hale

LEE L. HALE, (HAL026)
Attorney for Defendant George

/S/ James Brandyburg

JAMES BRANDYBURG (BRA077)
Attorney for Defendant George

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this the 20th day of December, 2011, served a copy of the foregoing pleading on:

Ms. Christina M. Adcock
Adams and Reese LLP
Post Office Box 1348
Mobile, Alabama  36633

Frank H. Kruse, Esq
215 Cedar Street
Mobile AL 36602

by e-fling.

/s/ Lee L. Hale

LEE L. HALE