IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GEOVERA SPECIALTY INS. CO., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 10-00641-KD-N |
| ) | |
| FRANK H. KRUSE, *Administrator for the* ) | |
| *Estate of Ryan Scott Small* and ) | |
| LaFREDRIQUE GEORGE, ) | |
|     Defendants. ) | |

**ORDER**

This matter is before the Court on Plaintiff GeoVera Specialty Insurance Company's Motion for Summary Judgment (Docs. 86-87),[1] Defendant LaFredrique George's Response (Doc. 102, 107), and GeoVera's Reply (Doc. 106, 111).[2]

**I.     Factual Background**

On March 25, 2011, Plaintiff GeoVera Specialty Insurance Co. ("GeoVera") filed an Amended Complaint against Defendants Stanley E. Small, Frank H. Kruse ("Kruse") as Administrator for the Estate of Ryan Scott Small (deceased), and LaFredrique George ("George"), seeking a declaratory judgment under 28 U.S.C. § 2201 *et seq.* as to the rights and obligations of all parties to this action pursuant to a Homeowners Insurance Policy ("the Policy") issued to Stanley Small. Specifically, Stanley Small purchased the subject Policy (issued on

---

1 Initially, GeoVera also moved for summary judgment on George's claim of wantonness. However, presently GeoVera states that "obviously, the wantonness claim for purposes of this coverage matter is now moot[]" in light of the state court's directed verdict on George's wantonness claim. (Doc. 111). Thus, GeoVera's motion for summary judgment on this basis is **MOOT.**

2 As to Plaintiff's Motion for Status Conference (Doc. 100, 103), filed in conjunction with the pending summary judgment motion, the Court finds that a hearing or status conference is not necessary at this time. The issues raised in Plaintiff's motion do not impact the Court's present ability to rule on the pending summary judgment motion. Nevertheless, to the extent Plaintiff wishes to pursue the matter further, the Mobile Bar Association maintains a grievance committee which may provide guidance. As such, Plaintiff's motion (Doc. 100, 103) is accordingly **DENIED.**

April 22, 2008) for the premises. (Doc. 80; 86-2 at 1). Mr. Small's son, Ryan Small, lived at the insured premises and was designated as an insured under the Policy.[3] (Doc. 86-2 at 1, 3). On March 31/April 1, 2009, Ryan Small attacked and injured a man named LaFredrique George at the insured premises.[4] (Doc. 18). The incident resulted in George being stabbed by Ryan Small at least eight (8) times. Following the events of March 31/April 1, 2009, Ryan Small was arrested and charged with attempted murder; he subsequently entered a plea of not guilty by reason of mental disease or defect. (Doc. 86-11).

On May 13, 2009, Stanley Small made a loss claim to GeoVera pursuant to this Policy for the physical injuries that occurred. (Doc. 86-2 at 3). Stanley Small subsequently filed a Notice of Non-Claim withdrawing his claim for coverage under the Policy. (Doc. 86-2 at 21-22). While there is no information of record indicating that Ryan Small filed a claim for coverage on the Policy, GeoVera does not dispute that he did.

Additionally, on December 30, 2009 George filed a civil suit (personal injury action) in the Circuit Court of Mobile County, Alabama against Ryan Small (and fictitious defendants) for damages relating to the injuries he sustained. (Doc. 102-2). Ryan Small died on April 22, 2010 (Doc. 86-2 at 19) and an estate was opened on September 2, 2010, such that Frank Kruse (administrator) was added as a party on September 29, 2010 (CV-2009-002192, *LaFredrqiue George v. Frank Kruse, Administrator of the Estate of Ryan Small*). In the state court complaint, George alleged four (4) counts for negligent infliction of physical injury, wantonness, negligent entrustment of dangerous instrument and negligent breach of undertaking or implicit duty. As to negligence, George alleged:

---

[3] While GeoVera does not represent as such, it appears from a review of the Declarations Page and Policy, that Ryan Small is an additional insured because he is a "resident of the household" who is Mr. Small's "relative" (his son).

[4] Stanley Small was not involved in the incident and is no longer a defendant in this case. (Doc. 80).

> On or about the 1st day of April, 2009, in the City of Mobile, County of Mobile, State of Alabama, the Defendant Small or Fictitious Defendant A negligently caused or allowed the infliction of severe injuries to the person of the Plaintiff George by keeping dangerous instruments capable of inflicting severe injuries in light of the circumstances in which the Defendant found himself at a time near the incident and also negligently caused or allowed the inflicting of severe injuries by stabbing about ten different times into his head, side, back, and arm with a dangerous instrument. Furthermore, the Defendant Small negligently delayed for many hours the taking of the Plaintiff George who was in an unconscious state bleeding from serious stab wounds to the hospital emergency room after the Plaintiff George had suffered serious injuries while occupying the Defendant Small's residence.

(Doc. 86-2 at 13-14).

GeoVera defended the state court lawsuit under a reservation of rights. On January 12, 2012, the jury rendered a verdict in that action in favor of George as to his negligence claim against the Estate, awarding him $125,000.00. (Doc. 107-3). The Estate was granted a directed verdict on George's wantonness claim. (Doc. 107-2).

## II.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(c) governs procedures and provides as follows:

> **(1) *Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) *Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be

3

>    presented in a form that would be admissible in evidence.
>
>    **(3)** *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
>    **(4)** *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

GeoVera, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004). If GeoVera satisfies its initial burden under Rule 56(c), the non-movants must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark, 929 F.2d at 608. In reviewing whether the non-moving parties have met their burden, the Court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movants is to be believed, and all justifiable inferences are to be drawn in their favor. Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted).

**III.    Discussion**[5]

"[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." Manuel v. Convergys Corp., 430 F.3d 1132, 1139 (11th Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  Adhering to the principle of *lex loci contractus*, Alabama courts hold that contract claims are governed by the laws of the state in which the contract was made, unless the contracting parties chose a particular state's laws to govern their agreement.  Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991).  It is axiomatic that insurance policies are "essentially like all other contracts," Hartford Fire Ins. Co. v. Shapiro, 117 So. 2d 348, 352 (Ala. 1960), and are therefore subject to the *lex loci contractus* doctrine.  See Cincinnati Ins. Co. v. Girod, 570 So. 2d 595, 597 (Ala. 1990) ("Because this dispute involves an interpretation of an insurance policy issued in the State of Alabama, under Alabama's conflicts of law rule the trial court would be obligated to apply the substantive law of Alabama[]").  As the Policy was issued by Lyon Fry Cadden Insurance Company in Mobile, Alabama for premises in Mobile, Alabama, and provides that the contract is "registered and delivered as surplus lines coverage under Alabama surplus lines insurance law[]" (Doc. 86-2 at 2-3), Alabama law governs.

The Policy provides coverage for occurrences resulting in personal liability and medical payments to others.  However, certain exclusions apply for bodily injury, as follows:

> **DEFINITIONS**
> **B. In addition, certain words and phrases are defined as follows:**
>      **2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.**
>                              \* \* \*
>      **8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:**
>                a. "Bodily injury"; or

---

[5] The Court has taken the facts in the light most favorable to non-movant George.

5

    b. "Property damage".

* * *

**SECTION II - EXCLUSIONS**
**E. Coverage E - Personal Liability And Coverage F - Medical Payments To Others**
**Coverages E and F do not apply to the following:**
  **1. Expected Or Intended Injury**
  "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":
    a. Is of a different kind, quality or degree than initially expected or intended; or
    b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion E.1 does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

* * *

  **8. Controlled Substance**
  "Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

* * *

**GEOVERA SPECIALTY INSURANCE COMPANY SPECIAL PROVISIONS**
**DEFINITIONS**
The definition of "occurrence" is replaced by the following:

* * *

  **8. "Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
    a. "Bodily Injury"; or
    b. "Property Damage"

Assault and battery is not an "occurrence", whether or not committed by or at the direction of an "insured"

**SECTION II – EXCLUSIONS**
**The following exclusions are added to E. Coverage**
**E – Personal Liability and Coverage F- Medical Payments to Others:**

* * *

**Assault or Battery**
"Bodily injury" or property damage arising out of assault or battery, whether or not committed by or at the direction of an "insured"…

In sum, the Policy does not provide coverage for "bodily injury" which is either "expected or intended," or which "aris[es] out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance[.]"  Under the Policy, assault and battery are also not an "occurrence" and bodily injury "arising out of" same is excluded.

  GeoVera asserts several grounds as the basis for denial of coverage under the Policy, relying upon certain exclusions in the Policy for intentional acts as well as a general public

policy argument. In Alabama, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, while the insurer bears the burden of proving the applicability of any policy exclusion. See, e.g., Colonial Life & Accident Ins. Co. v. Collins, 194 So.2d 532, 535 (1967); U.S. Fidelity. & Guar. Co. v. Armstrong, 479 So.2d 1164, 1168 (Ala.1985).

GeoVera claims that public policy precludes coverage for the incident which it characterizes as "a bizarre and illegal drug party that eventually resulted in a violent and vicious stabbing that seriously injured George[]" -- despite George's contention that Small was mentally incapacitated at the time. GeoVera also asserts that the incident comprises assault and battery (intentional acts on the part of Ryan Small) and thus, cannot constitute an "occurrence" (*i.e.*, accident) under the Policy. Next, GeoVera contends that George's injuries were "expected" or "intended" by insured Ryan Small and thus, the claims are excluded as intentional conduct. In response, George asserts that Ryan Small's actions on March 31/April 1, 2009 were not intentional but negligent and were the result of Ryan Small's insanity and possible drug induced state such that he could not have formed the intent to do anything.

Essential to GeoVera's arguments for denial of coverage is the presumption by GeoVera that Ryan Small's acts were *intentional* (which George disputes, contending that Ryan Small lacked any intent to harm him due to his insanity and/or use of drugs at the time). This is true also for its public policy argument. "There can be no valid insurance coverage which will protect…the insured or indemnitee against a loss which he may purposely and willfully create, or which may arise from his immoral, fraudulent, or felonious conduct[]" as "[s]uch an express contract of insurance…is void against public policy."  (Id. (citing St. Paul Ins. Co. of Illinois v. Cromeans, 771 F. Supp. 349, 352 (N.D. Ala. 1991) (stating that all contracts insuring against

intentional misconduct are void in the State of Alabama as against public policy and holding that a physician's liability for sexual misconduct towards patients was not covered); see also Horace Mann Ins. Co. v. Fore, 785 F. Supp. 947, 956 (M.D. Ala. 1992) (setting forth the commonly referenced "criminal acts" exclusion and holding that an insured's liability for sexually molesting students fell within certain exclusions including that for criminal activity and intended injury). Thus, GeoVera's public policy argument is rooted in the general prohibition of coverage for intentional acts.

There are two schools of thought regarding whether an insane person's conduct can constitute an intentional act under an insurance policy. Prasad v. Allstate Ins. Co., 644 So.2d 992, 993-994 (Fla. 1994). The first line of authority states that an insane person's acts are intentional only if a person has the ability to understand the wrongfulness of his conduct. Id. The second line of authority concludes that an injury inflicted by an insane person is intentional if the actor understands the physical nature and consequences of the act (*e.g*., the person intended to shoot the gun knowing it would cause harm as opposed to a person who thought he was peeling a banana but was actually shooting a gun). Id. at 994.

The court in Prasad agreed with the second line of thought.  GeoVera urges the Court to follow Florida law as decided in Prasad: that an injury inflicted by an insane person is not an accident but is an intentional act if the person intended to cause injury -- even if the conduct was the result of a mental condition.  However, Alabama law states otherwise.  Specifically, in Continental v. Cunningham, 66 So. 41, 42 (Ala. 1914) (emphasis added), the Alabama Supreme Court explained: "[i]f the actor has intelligence enough to understand the physical nature and consequences of his act, and, *without the compulsion* of an irresistible physical force or *of an irresistible insane impulse*, consciously directs his action so that the injury of the insured is the

8

natural or probably consequence thereof, then that injury is the result of an intentional act." Likewise, in National Life & Acc. Ins. Co. v. Hannon, 101 So. 892, 894 (Ala. 1924), the Alabama Supreme Court stated that "[t]he rule is that in order to render an injury unintentional and accidental under policies of accident insurance by reason of the insanity of the person who inflicted the injury, there must be such a diseased and deranged condition of the mind as to render the person incapable of distinguishing right from wrong in relation to the particular act with which he is charged."  See also e.g., Continental Cas. Co. v. Meadows, 7 So.2d 29, 32 (Ala. 1942) (citing Hannon).

  As noted *supra*, GeoVera bears the burden of proving that Small's acts were intentional, *i.e.*, that he understood the wrongfulness of his conduct.  As previously stated, on summary judgment, the Court view the facts in the light most favorable to non-movant George.  In that regard, George testified that he had known Ryan Small since 2007 but that at the time of the incident Small told George things like "some people were after him..trying to kidnap him[]" but that Navy Seals were coming to help him, and that when he went over to Small's house his actions were "kind of strange." (Doc. 86-3 at 2, 10, 14 (Dep. George at 31, 48, 56)).  George testified that at one point in the evening when he went to check on Small, he was "in his bedroom bleeding[]" as he was sitting Indian style on his bed, naked, wrapped in a bloody towel while holding big gigantic needles.  (Id. at 23, 24 (Dep. George at 68, 70)).  While George had seen Small use needles before, "[t]hat was a totally different level[]" and Small indicated "he was injecting himself in his testicles[]" and that night he "went all the way off the wall" on "a whole [ ]nother level….it made me feel uncomfortable."  (Id. at 26, 28 (Dep. George at 75, 77)).  After George talked with Small and felt the situation was under control, he went to sleep at Small's home; he awoke to being stabbed by Small.  (Id. at 31-32 (Dep. George at 80-81)).

Upon being stabbed, George asked Ryan what he was doing and George noted that "he looked very, very…out of it, like scary to me. He was shaking. He was sweating. He just didn't look like the person that I knew. I didn't really know what happened…" (Id. at 34 (Dep. George at 85)). George testified that "[t]he last conscious recollection of Ryan is seeing him in a state of mind that I've never seen him or anyone else. Like I said earlier, he was shaking; he was sweating; and all of this was very scary to me. I mean -- that was it. At that time I was already stabbed." (Doc. 102-3 at 60-61 (Dep. George at 93-94)). George further stated that, "I have been around Ryan numerous times before this incident…and I've never seen him act that way. Never. It just seemed to me like it was more than what I could understand at the time. I just could not grasp – even with me just looking at him when he was stabbing me, I did not recognize the person that I was seeing." (Id. at 67 (Dep. George at 100)).

George's testimony presents sufficient evidence to create a material issue of fact as to Ryan Small's sanity, and thus his ability to commit an intentional act, at the time of the incident.[6] Accordingly, summary judgment on whether the policy exclusion for intentional acts is applicable is **DENIED.** [7]

Finally, GeoVera claims that due to the involvement of illegal drugs, there is no coverage as the Policy provides an exclusion for injures arising out of the use, sale, manufacture, delivery, transfer or possession of "controlled substance." In support, GeoVera relies on the photographs taken of the Small premises that shows drugs and drug paraphernalia, the investigative reports that indicate that drugs were found at the premises, and the hospital records that indicate both Ryan Small and George tested positive for drugs (Docs. 86-4, 86-5, 86-6, 86-7, 102-7 at 1-5). In

---

6 The Court notes that non-expert opinion of sanity is admissible if witness is appropriately acquainted with the witness. Hannon, 101 So. at 894.

7 The undersigned has not found, and George has not cited, any authority for the proposition that the state court determination regarding Ryan Small's mental state is admissible evidence.

contradiction, George testified that Ryan Small did not appear to have been under the influence of drugs or alcohol before the attack occurred. (Doc. 86-3 at 41-42 (Dep. George at 97-98)).[8] George also asserts that the controlled substance exclusion is inapplicable because there is no evidence that the use or possession of a controlled substance *caused* his injuries.

The Court finds that there is a material issue of fact whether Small's acts arose out of insanity due to a mental defect or insanity due to the use or consumption of drugs. Accordingly, summary judgment on whether the controlled substance exclusion is applicable is **DENIED.**

IV.   **Conclusion**

Accordingly, it is **ORDERED** that Plaintiff GeoVera Specialty Insurance Company's Motion for Summary Judgment (Docs. 86-87) is **DENIED.**

**DONE** and **ORDERED** this the **15th** day of **February 2012.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[8] The evidence indicates that Ryan Small injected George with cocaine after he stabbed George (*i.e.*, that George did not voluntarily consume the drug). George also contends that he did not use cocaine or marijuana prior to the incident (even though he tested positive for those drugs). (Doc. 86-3 at 42 (Dep. George at 98)).

11